**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 11-SUB V |
| BRENT AND MEGAN CANN | : | CASE NO. **21-**52013 |
| Debtor. | : | |

**Amended Plan of Reorganization for Small Business Under Chapter 11 -Sub V
Brent and Megan Cann's Plan of Reorganization dated May 14, 2021**

COMES NOW BRENT AND MEGAN CANN, Debtors and Debtors-in-possession in the above-captioned case ("Debtor"), and pursuant to sections 1123,1189, and 1190 of Title 11 of the US Code ("Bankruptcy Code") and Rule 3016 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), propose this Amended Plan of Reorganization ("Plan") for the resolution of the Claims against Debtors. Debtors are the proponent of this Plan as required under 1191 of the Bankruptcy Code.

**A. Description and History of the Debtor's Business**

Debtors are individuals.  Megan Cann is employed as a nurse with Emory Healthcare and earns an income of approximately $72,000.00/year.  Brent Cann is a business owner receiving 1099 income of $180,000.00/year.

In 2016, Brent Cann and his friend, Richard "Doug" Cullinan, formed C2 Investment Partners, LLC ("C2") to operate several Newk's Eateries franchises.  Brent Cann and Doug Cullinan each own 50% of C2 which in turn owns the following entities:

| Name | Percentage | Year | Location | Status |
|---|---|---|---|---|
| Briarcliff Restaurant Acquisitions, LLC | 51% | 2016 | Briarcliff Rd (Atlanta, GA) | Open |
| GA Fast Casual, LLC | 51% | 2017 | Lavista Rd Tucker, GA | Open |
| Midtown Acquisitions, LLC | 51% | 2017 | Peachtree St (Atlanta, GA) | Closed |
| LRA, LLC | 65% | 2017 | Lawrenceville, GA | Closed |
| GA Fast Casual II, LLC | 51% | 2018 | Howell Mill Road (Atlanta, GA) | Closed |
| GA Fast Casual III, LLC | 55% | 2019 | Buford, GA | Open |

To the best of Debtors' knowledge, all of the entities are behind on their lease obligations, vendor payments and other debt obligations.  Several lawsuits are pending against the entities.  Brent Cann has resigned any and all positions he may hold with C2 and has no intent to operate the businesses.   There is no perceived value to these businesses, and they are unlikely the

1

recover from the devastation caused by the COVID pandemic. Brent Cann is liable on much of the underlying debt and lease obligations. Megan Cann is personally liable on at least one lease obligation and a SBA loan.

In addition to the C2 business, Brent Cann owns the following businesses which own and operate FedEx routes:

| Name | Percentage | Year | Location | Status |
|------|-----------|------|----------|--------|
| Coastal Logistics Holdings Inc | 28% | 2018 | Savannah, GA | Open |
| Coastal Transport Holdings Inc | 28% | 2018 | Savannah, GA | Open |
| Coastal Cargo Holdings Inc | 28% | 2019 | Savannah, GA | Never Operated |
| Coastal Delivery Holdings Inc | 28% | 2019 | Savannah, GA | Fuel Account Only |

Only Coastal Logistics Holdings Inc. and Coastal Transport Holdings Inc are income generating businesses. These businesses continue to operate and are the source of Brent Cann's income. The businesses are required to enter into a new contract each year with FedEx and typically sell for 70% of gross annual sales (less a ten percent brokerage fee). While the businesses can generate revenue and income for Brent Cann, the sale of these businesses would not generate any net proceeds for payment of creditors.

**B. Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.

| Property | FMV | Debts/Liens | Exemption | Equity |
|----------|-----|-------------|-----------|--------|
| Jewelry | $ 20,000.00 | $ 0.00 | $ 2000.00 | $ 18,000.00 |
| Checking Account | $ 65,000.00 | $ 0.00 | $ 12,400.00 | $ 52,600.00 |
| Household furnishings | $ 10,000.00 | $ 0.00 | $ 10,000.00 | $ 0.00 |
| Electronics | $ 500.00 | $ 0.00 | $ 0.00 | $ 500.00 |
| Clothing | $ 500.00 | $ 0.00 | $ 0.00 | $ 500.00 |
| Paintings | $ 5,000.00 | $ 0.00 | $ 0.00 | $ 5,000.00 |
| IRA | $ 19,542.00 | $ 0.00 | $ 19,542.00 | $ 0.00 |
| 2017 Acura MDX | $ 18,000.00 | $ 0.00 | $ 15,000.00 | $ 3000.00 |
| 2021 Toyota Highlander XLE | $ 38,000.00 | $ 38,000.00 | $ 0.00 | $ 0.00 |
| HSA | $ 12,000.00 | $ 0.00 | $ 0.00 | $ 12,000.00 |
| Real Estate (1471 Devonash Ln) | $ 575,000.00 | $ 799,000.00 | $ 0.00 | $ 0.00 |
| 401K | $ 15,423.00 | $ 0.00 | $ 15,423.00 | $ 0.00 |
| Tax Refund | $ 30,000.00 | $ 0.00 | $ 0.00 | $ 30,000.00 |
| County Club membership | $ unknown | $ 0.00 | $ 0.00 | $ 0.00 |
| C2 Investment Partners, LLC | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

2

| Coastal Cargo Holdings | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
|---|---|---|---|---|
| Coastal Delivery Holdings | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Coastal Logistics Holdings | $ 1,277,640.00 | $1,336,500.00 | $ 0.00 | $ 0.00 |
| Coastal Transport Holdings | $ 1,769,040.00 | $1,814,500.00 | $ 0.00 | $ 0.00 |
| Total: | | | | $121,600.00 |

A summary of Debtor's creditors is as follows:

| Creditor | Accnt | POC | Status | Total Claim |
|---|---|---|---|---|
| ADT | | | Unsecured | $ |
| Airgas | | | Unsecured | $ |
| Ally Bank | 4855 | 3 | Unsecured- PG with Coastal Co. | $ 38,626.66** |
| Ally Bank | 4877 | 4 | Unsecured -PG with Coastal Co. | $ 39,522.47** |
| AmEx | 1003 | 18 | Unsecured | $ 2,174.69 |
| AmEx | 2005 | | Unsecured | $ |
| Apple Pie Capital | 0735 | | Unsecured-PG | $ 250,219.42 |
| Apple Pie Capital | 0947 | | Unsecured-PG | $ 1,153,211.20 |
| AT&T | 1832 | | Unsecured | $ |
| Atlanta Gas Light | 4527 | | Unsecured | $ |
| Atlanta Capital Bank | 5006 | | Unsecured-PG | $ 484,935.78 |
| Balboa Capital | 8002 | | Unsecured-PG with Coastal Co. | $ 49,000.00** |
| Bush Truck Leasing | 7096 | | Unsecured-PG with Coastal Co. | $ 50,000.00** |
| Bush Truck Leasing | 4940 | | Unsecured-PG with Coastal Co. | $ 79,000.00** |
| Bush Truck Leasing | 7095 | | Unsecured-PG with Coastal Co. | $ 50,000.00** |
| Bush Truck Leasing | 5559 | | Unsecured-PG with Coastal Co. | $ 50,000.00** |
| Bush Truck Leasing | 4939 | | Unsecured-PG with Coastal Co. | $ 79,000.00** |
| Chase Card Srv | 7039 | 6 | Unsecured | $ **15,472.42** |
| Chase Card Srv | 0646 | 16 | Unsecured | $ 3,976.38 |
| Cintas | | | Unsecured | $ |
| City of Buford | | | Unsecured | $ |
| City of Lawrenceville | 3002 | | Unsecured | $ |
| Colliers International | | | Unsecured-PG | $ |
| Columbia Properties | | | Unsecured-PG | $ |
| Comcast | | | Unsecured | $ |
| Credibility Capital | | | Unsecured-PG | $ 120,850.60 |
| Crunchtime Info Systems | | | Unsecured | $ |
| Design Team Sign Co. | | | Unsecured | $ |
| Eastern Funding LLC | 8001 | | Unsecured-PG with Coastal Co | $ 217,000.00** |
| Eastern Funding LLC | | | Unsecured-PG with Coastal Co | $ 40,000.00** |
| Eastern Funding LLC | | | Unsecured-PG with Coastal Co | $ 53,000.00** |
| Eastern Funding LLC | | | Unsecured-PG with Coastal Co | $ 75,000.00** |
| Ecolab | | | Unsecured | $ |
| Ecolab Food Safety | | | Unsecured | $ |

| | | | | |
|---|---|---|---|---|
| Ecosure | | | Unsecured | $ |
| Exovations | | | Secured-Materialman's Lien | $ 6,746.00 |
| Fifth Third Bank | **9666** | | Unsecured-PG | $ **979,386.03** |
| Fora Financial | | | Unsecured | $ 53,000.00 |
| Ford Credit | 5436 | 9 | Unsecured- PG with Coastal Co | $ 41,657.09** |
| Ford Credit | 9517 | 10 | Unsecured – PG with Coastal Co | $ 46,977.38** |
| Ford Credit | 5473 | 11 | Unsecured- PG with Coastal Co | $ 41,656.77** |
| Ford Credit | 9037 | 12 | Unsecured -PG with Coastal Co | $ 47,699.93** |
| Ford Credit | 9155 | 13 | Unsecured-PG with Coastal Co | $ 52,675.03** |
| Ford Credit | 9392 | 14 | Unsecured- PG with Coastal Co | $ 50,164.80** |
| Ford Credit | 9421 | 15 | Unsecured -PG with Coastal Co | $ 50,164.80** |
| GA Power | | | Unsecured | $ |
| GMFS Svc | | | Secured by 1471 Devonash Ln | $ 269,000.00 |
| Hederman Brothers | | | Unsecured | $ |
| Hitachi Capital America | 9512 | | Unsecured-PG with Coastal Co | $ 112,000.00** |
| Hitachi Capital America | 9510 | | Unsecured-PG with Coastal Co | $ 110,000.00** |
| Hospitality Control Sol. | | | Unsecured | $ |
| Hot Schedules | | | Unsecured | $ |
| Hotel & Restaurant Sup | 7230 | 7 | Unsecured-PG | $ 2,209.55 |
| Infinite Energy | | | Unsecured | $ |
| Kabbage | | | Unsecured | $ 101,000.00 |
| Kapitus | | | Unsecured | $ 124,000.00 |
| Lendini (Funding Metrics) | 4180 | 8 | Unsecured- PG | $ 112,627.46 |
| Libertas Funding LLC | | | Unsecured | $ 323,944.19 |
| Merton Walk LLC | | **20** | Unsecured-PG | $ **92,508.00** |
| Metro Communications | | | Unsecured | $ |
| Millennium Digital Tech | | | Unsecured | $ |
| Netlink Voice | | | Unsecured | $ |
| Newks Franchise Co. | | | Unsecured | $ |
| Norstrom | 2585 | | Unsecured | $ 246.17 |
| NuCo2 | | | Unsecured-PG | $ |
| OLO | | | Unsecured | $ |
| One Point | | | Unsecured-PG | $ |
| Phoenix Wholesale Food | | | Unsecured | $ |
| PREF Metropolis LLC | | | Unsecured-PG | $ |
| Republic Services | 2209 | | Unsecured | $ 1,558.85 |
| Republic Services | 9744 | | Unsecured | $ 883.82 |
| Retail Planning Corp | | | Unsecured | $ |
| Richard Cullinan | | | Unsecured | $ |
| Ring Central | | | Unsecured | $ |
| Scana Energy | 0834 | | Unsecured | $ |
| Simply Bank | 9677 | 5 | Secured- Stock Pledge (Coastal Co.) | $ 461,882.53** |
| Spectrum Internet | 0862 | | Unsecured | $ |

| | | | | |
|---|---|---|---|---|
| Sun Life Assurance | 7657 | 17 | Unsecured -PG | $ 111,191.13 |
| SunTrust | 9901 | | Unsecured | $ 40,054.00 |
| SunTrust SBA-Secured | | | Secured by 1471 Devonash Ln | $ 530,000.00 |
| SunTrust -SBA | 4050 | | Unsecured | $ 672,534.00 |
| Swift Financial | 4180 | 19 | Unsecured-PG | $ 102,950.41 |
| T-Mobile | 0662 | | Unsecured | $ |
| The Business Backer LLC | 4180 | 1 | Unsecured-PG | $ 143,552.44 |
| Toyota | | | Secured by Highlander | $ 38,000.00 |
| Tucker Meridian LLC | | | Unsecured-PG | $ |
| US Foods | | | Unsecured-PG | $ |
| Van Wagner Comm | 8625 | 2 | Unsecured-PG | $ 14,100.00 |
| **Wells Fargo Auto** | **5941** | **21** | Unsecured-PG with Coastal Co | **$ 48,391.52**\*\* |
| Wells Fargo Auto | | | Unsecured-PG with Coastal Co | \*\* |
| | | | Subtotal | **$7,171,868.99** |
| | | | Less "Coastal" related obligations | **$1,421,536.45** |
| | | | Total | **$5,750,332.54** |

\*\* All debts with Coastal Transport Holdings, Coastal Logistics Holdings, Coastal Cargo Holdings and Coastal Delivery Holdings are being fully serviced by those respective entities.  There are no delinquencies on these obligations.  As a result, these debts are not included in the totals below.

| | |
|---|---|
| Secured Claims: | $ 843,746.00 |
| Unsecured Priority Debts: | $ 0.00 |
| Unsecured General: | **$ 4,906,586.54** |

Holders of claims would not receive any greater return in a liquidation of Debtor's assets. Moreover, in liquidation, the Subchapter V Trustee or Chapter 7 Trustee would incur costs associated with liquidation.

The proposed Plan contemplates payments greater than any recovery under liquidation.

## C. Ability to make future plan payments and operate without further reorganization

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Debtor has provided projected financial information as Exhibit A.

The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $3,378.00

The final Plan payment is expected to be paid on the last day of the 48th month after the plan is confirmed.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### D.    Alternative Confirmation Standard Under Section 1191(a) and (b)

Debtor seeks to confirm this Plan by obtaining the consent of all Classes provided for in this Plan by a majority in number and two-thirds in amount of allowed Claims actually voting. If Debtor succeeds in obtaining the consent of all Classes, the provision of the Plan referencing and operating under section 1191(a) of the Bankruptcy Code will apply. If Debtor is unable to obtain the consent of all Classes, Debtor will request the Court to confirm the Plan under 1191(b). In this case, the provisions of the Plan referencing and operating under 1191(b) of the Bankruptcy Code will apply.

## ARTICLE I
## SUMMARY

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of BRENT AND MEGAN CANN (the *Debtors*) from future income they receive from employment with Coastal Transport Holdings LLC, Coastal Logistics Holdings and Emory Healthcare.

This Plan provides for:

1 class of priority claims;

4 classes of secured claims;

4 classes of non-priority unsecured clams; and

1 class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 3.4 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

The categories of Claims and Interests set forth contained herein classify all Claims against Debtor for all purposes of this Plan. A Claim or Interest shall be classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such claim or Interest qualifies within the description of such different Class. The treatment with respect to each Class of Claims and Interest provided herein shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    Class 1.          All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).

2.02    Class 2.          The claim of GMFS SVS (mortgage – first priority position) secured by 1471 Devonash Lane, Atlanta GA to the extent allowed as a secured claim under § 506 of the Code.

2.03    Class 3.          The claim of SunTrust (SBA loan – second priority position) secured by 1471 Devonash Lane, Atlanta GA to the extent allowed as a secured claim under § 506 of the Code.

2.04    Class 4           The claim of Exovations (Materialman's Lien-third priority position) secured by 1471 Devonash Lane, Atlanta, GA to the extent allowed as a secured claim under §506 of the Code

2.05    Class 5           The claim of Toyota secured by 2021 Toyota Highlander to the extent allowed as a secured claim under § 506 of the Code.

2.06    Class 6           The claims of originating from Coastal Transport Holdings, Coastal Logistics Holdings, Coastal Delivery Holdings, Coastal Cargo Holdings in which Debtor is a personal guarantee.

2.07    Class 7           The claims arising from the rejection of an executory contract or unexpired leases

| 2.08 | Class 8 | Allowed general unsecured claims |
| 2.09 | Class 9 | Unsecured unknown, disputed and/or un-liquidated claims listed on the Debtor's petition in which no proof of claim has been filed |
| 2.10 | Class 10 | The interests of the individual Debtor in property of the estate. |

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

### 3.01  Unclassified claims

Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not classified for purposes of voting on, or receiving distributions under the Plan. Holders of such Claims are not entitled to vote on the Plan. All such Claims, other than that of the Subchapter V Trustee addressed below, are instead treated separately in accordance herein and in accordance with the requirements set forth in sections 1129(a)(9)(A) and 1191(e) of the Bankruptcy Code, as applicable.

### 3.02  Administrative expense claims

Subject to provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim on the latest of (i) the Effective date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon be such holder and Debtor, (iv) if the Plan is confirmed under 1191(b) of the Bankruptcy Code, pro-rata over the period (a) starting on the first day of the month immediately following the month in which the order on the application of the holder of an Allowed Administrative Expenses Clam for compensation became a Final Order and (b) ending on the first day of the month in which the Final Distribution to the unsecured creditors is due, or (v) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expenses Claims representing obligations incurred by Debtor in the ordinary course of business after the Filing Date, or otherwise assumed by Debtor on the Effective Date pursuant to this Plan, including any tax obligations arising after the Effective Date, will be paid or performed by Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

Except as otherwise provided in this Plan, any person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from the operation by Debtor in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Confirmation Date. At the same time any person files an

Administrative Expense Claim, such person shall also serve a copy of the Administrative Expense Claim upon counsel for Debtor and the Subchapter V Trustee. Any person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claim by Debtor or the Estate.

### 3.03  Priority tax claims

Each holder of a priority tax claim will be paid consistent with § 1129(a)(9)(C) and § 507(a)(8) of the Code.

### 3.04  Statutory fees

All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

### 3.05  Prospective quarterly fees

All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.

### 3.06  Professional Fees

Any person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days after the Confirmation Date or by such other deadline as may be fixed by the Bankruptcy Court.

### 3.07  Post Confirmation Professional Fees

Debtor may pay professional fees incurred after confirmation of the Plan without Court approval, other than the fees of the Subchapter V Trustee, which must be approved by the Court.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**4.01 Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Priority Claims | IMPAIRED | Class 1 is impaired by this Plan. Except for Sub-V Trustee fees[1], each holder of a Class 1 Priority Claim will be paid in monthly payments pro rata starting on the Effective Date and continuing until paid in full. |
| Class 2 – Secured claim held by GMFS in the amount of $269,000.00 (1st Lien Priority) | UNIMPAIRED | Debtor will make regular payments under the current terms and conditions of the note. No changes will be made. |
| Class 3 – Secured claim held by SunTrust in the amount of $530,000.00 (2nd Lien Priority) | IMPAIRED | Based on Debtors estimated FMV of the real property located at 1471 Devonash Lane, Atlanta GA ($575,000.00) and the amount owed on Senior Liens ($269,000.00) it appears that there is insufficient value to pay this claim as a fully secured creditor. Accordingly, this claim will be treated as follows: Secured amount: $306,000.00 Unsecured amount: $224,000.00 \n\n This debt is currently being serviced by the Newk's franchise entities and is at this time current on its obligation. As a result, Debtor will only make payments on the unsecured portion. The unsecured portion of $224,000.00 will be included in Class 8. The creditor will retain its lien against the real property in the amount of $306,000.00. \n\n Any payments made by any of the Newk's franchise entities or any other party to this creditor that reduce the balance of the debt below the claim amount, shall reduce the obligation of the Debtor in a corresponding amount. |

---

[1] See section Article X below.

| | | |
|---|---|---|
| Class 4- Secured claim held by Exovations in the amount of $6,746.00 (3rd Lien Priority) | IMPAIRED | Based on Debtors estimated FMV of the real property located at 1471 Devonash Lane, Atlanta GA ($575,000.00) and the amount owed on Senior Liens ($799,000.00) it appears that there is insufficient value to pay this claim as secured. This claim will be treated as fully unsecured and the lien will be stripped.<br><br>As a result, the full amount of the claim in the amount of $6,746.00 will be included in Class 8. |
| Class 5 – Secured claim held by Toyota in the amount of $38,000.00 | UNIMPAIRED | Debtor will make regular payments under the current terms and conditions of the note. No changes will be made. |
| Class 6- The claims of originating from Coastal Transportation Holdings, Coastal Logistics Holdings, Coastal Delivery Holdings, Coastal Cargo Holdings on which Debtor has a personal guarantee. | UNIMPAIRED | There will be no changes to the terms, conditions, or obligations on this claim.  All regular payments shall continue to be made by the Coastal entities.  Debtor will assume the current loan obligations including, but not limited to his personal guarantee. |
| Class 7 – Unsecured claims arising from the rejection of an executory contract or unexpired lease | IMPAIRED | In the event a creditor files a timely claim as the result of the rejection of a lease or other executory contact,  the allowed claims in this class will be treated as an unsecured claim and included in Class 8. |

| Class 8 – General Unsecured Class ($**4,906,586.54**-includes class 4 and unsecured portion from class 3) | IMPAIRED | *Confirmation Under Section 1191(a)*<br><br>If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, Debtor shall pay the General Unsecured Creditors monthly payments of $3,378.00, commencing on the 1st of the month immediately following the completion of the payment in Class 1 and continuing every month thereafter for 48 months.  Each creditor in this class will be paid a pro-rata share of a total payout amount of $3,378.00.  There shall be no interest paid on these claims.  It is estimated that each creditor will receive 3.4% of their claims.<br><br>*Confirmation under Section 1191(b)*<br><br>If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, Debtor shall pay all of its projected disposable income over a three (3) year period beginning on the 1st of the month immediately following the completion of the payment in Class 1. A copy of Debtor's budget showing its projected disposable income is attached to this Plan as Exhibit "A". The Debtor is proposing to make larger payments to creditors if it is confirmed under 1191(a) consensually.<br><br>To the extent any of the Newk's franchise entities or any other party make payments to any of these creditors that reduce the balance below the claim amount, the payments due hereunder shall be reduced in a corresponding amount. |
| Class 9 – Unsecured Disputed and/or un-liquidated claims for which no proof of claim was filed | IMPAIRED | These creditors will not be paid any distribution under the plan. |

| Class 10 - Interests of the individual Debtor | UNIMPAIRED | Except as may be expressly provided otherwise in the Plan, upon confirmation the Debtor will retain all of the property of the estate free and clear of all liens, claims, and encumbrances not expressly retained by creditors. The Debtors will retain all of the rights, powers, and duties of debtor in possession under the Bankruptcy Code. |
|---|---|---|

Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e., at the percentage distribution or amount creditor would receive over the life of the Plan as designated in the Plan and including any accrued and unpaid interest, if any) without prepayment penalty.

Debtor shall not make any distribution of the funds to any particular creditor until the amount owed to the particular creditor equals or exceeds $15.00 or until the payments will result in final payment to the creditor under the Plan.

Payments to creditors are to be made by the 5th of each month commencing after the Effective Date.

Notwithstanding anything else in this document to the contrary, any claim listed above shall be reduced by any payment received by the creditor holding such claim from any third party or other obligor and Debtor's obligations hereunder shall be reduced accordingly.

Debtor shall not be required to make any deposit of payment of any claims in excess of the amount of liabilities admitted by Debtor.

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.


### ARTICLE V
### ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    **Disputed Claim**

A *disputed claim* is a claim that has not been allowed or disallowed by a final non- appealable order, and as to which either:

(i)  a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii)  no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    **Delay of distribution on a disputed claim**

No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    **Settlement of disputed claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01 **Assumed/Rejected executory contracts and unexpired leases**

(a)  ASSUMED:  The Debtor, Brent Cann, assumes his personal guaranty on the following executory contracts and unexpired leases as of the Effective Date:

    (i)      Contracts with Bush Truck Leasing
    (ii)     Contracts with Eastern Funding LLC
    (iii)    Contracts with Wells Fargo Auto
    (iv)    Contract with Simply Bank
    (v)     Contract with Balboa Capital
    (vi)    Contract with Hitachi Capital America
    (vii)   Contact with Ally Bank
    (viii)  Contract with Ford Credit

(b)  REJECTED:  Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date, including but not limited to the following:

    (i)      Lease with Colliers International regarding the Newk's Eatery located at 3730 Buford Hwy, Buford, GA 30519.
    (ii)     Lease with Columbia Properties regarding the Newk's Eatery located at 2566 Briarcliff Rd, Atlanta, GA 30329.

| | |
|---|---|
| (iii) | Lease with Merton Walk, LLC regarding the Newk's Eatery located at 911 Duluth Hwy, Lawrenceville, GA 30043. |
| (iv) | Lease with PREF Metropolis, LLC regarding the Newk's Eatery located at 933 Peachtree Street, Atlanta, GA 30309. |
| (v) | Lease with Retail Planning Corporation regarding the Newk's Eatery located at 1715 Howell Mill Rd, Atlanta, GA 30318. |
| (vi) | Lease with Tucker Meridian, LLC regarding the Newk's Eatery located at 4280 LaVista Rd, Tucker, GA 30084. |
| (vii) | Contract with Fifth Third Bank |
| (viii) | Contract with Atlantic Capital Bank |
| (ix) | Contract with Republic Services |
| (x) | Contract with SunLife Assurance of Canada |
| (xi) | Contract with Lendini |
| (xii) | Contract with One Point |
| (xiii) | Contract with ApplePie Capital |
| (xiv) | Contract with The Business Baker LLC |
| (xv) | Contract with NuCO2 |
| (xvi) | Contract with Van Wagner Communications |
| (xvii) | Contract with Credibility Capital Inc |
| (xviii) | Contract with Swift Financial LLC |
| (xix) | Contract with Hotel & Restaurant Supply |
| (xx) | Contract with Newk's Franchise Corp |

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan. Any claims which are not timely filed will be disallowed and discharged.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 7.1   Source of Funds for Distribution

The source of funds for the payment pursuant to the Plan will be Debtors' income from employment and ownership of their remaining companies.

A copy of Debtors post confirmation projections are set forth on **Exhibit A** to this Plan. Debtors' projections are based on Debtors' previous periods of income. Debtors are able to reasonably project income and expenses based on such information.

### 7.2   Bank Accounts

Debtor may maintain bank accounts under the confirmed Plan in the ordinary course of business. Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course.

7.3      **Effectuating Documents, Further Transactions**

Debtor is authorized to execute, deliver, file or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

## ARTICLE VIII
## DEFINITIONS AND GENERAL PROVISIONS

### 8.01  Definitions and rules of construction

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article of the Plan. Any term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term therein.

### 8.01.1 Definitions

The following terms, when used in this Plan, shall have the following meaning:

**Administrative Expense Claim** means a Claim for payment of an administrative expense entitled to priority under sections 507(a)(2) of the Bankruptcy Code

**Allowed Claim** shall mean a claim (i) in respect of which a proof of claim has been filed with the Court within the period of limitation fixed by Federal Rule of Bankruptcy Procedure 3001 or (ii) scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or un-liquidated as to amount, in either case as to which no objection to the allowance thereof has been raised within any applicable period of limitation fixed by Rule 3001 or an order of the Court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

**Allowed Priority Claim** shall mean an Allowed Claim entitled to priority under 11 U.S.C. § 507.

**Allowed Secured Claim** shall mean an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under Section 553 of the United States Bankruptcy Code (the "Code"), to the extent of the value (determined in accordance with Section 506(a) of the Code) of the interest of the holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

16

**Allowed Unsecured Claim** shall mean an Allowed Claim which is not secured in the manner of an allowed secured claim.

**Assets** means, collectively, all of the property, as defined by section 541 of the Bankruptcy Code, of the Estate of Debtor (including without limitation, all of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such properties exist on the Effective Date or thereafter.

**Avoidance Action** means any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

**Ballot** means each of the ballot forms that are distributed with the Plan to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

**Bankruptcy Case** means the chapter 11 case initiated by Debtor's filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under Subchapter V of Chapter 11 of the Bankruptcy Code.

**Bankruptcy Code** means title 11 of the United States Code.

**Bankruptcy Court** means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

**Bankruptcy Rules** means, collectively, the Federal Rules of Bankruptcy Procedure.

**Business Day** means any day on which the commercial banks are required to be open for business in Atlanta, Georgia and which is not a weekend or legal holiday recognized by the Bankruptcy Court or the Superior Courts of the State of Georgia.

**Chapter 11** shall mean Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 1101 *et seq.*

**Claim** shall mean any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to right of payment, against Debtor in existence on or as of March 11, 2021, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, secured or unsecured.

**Class** shall mean any class into which Allowed Claims are classified pursuant to Article II.

**Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order.

**Confirmation Hearing** means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1191 of the Bankruptcy Code, as such hearing may be continued.

**Confirmation of The Plan** shall mean the date on which an order by the Court becomes final confirming the Plan in accordance with Chapter 11.

**Confirmation Order** means the order confirming this Plan pursuant to section 1191 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to Debtor.

**Court** shall mean the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

**Debtor** shall mean BRENT AND MEGAN CANN prior to and subsequent to the filing of the Chapter 11 petition initiating this reorganization case.

**Disallowed Claim** means a Claim or any portion thereof that:(i) has been disallowed by a Final Order, (ii) is listed in any of Debtor' Schedules at zero, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in Debtor' Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

**Disputed Claim** means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

**Distribution** means any distribution by Debtor or reorganized Debtor to a Holder of an Allowed Claim.

**District Court** means the United States District Court for the Northern District of Georgia, Atlanta Division.

**Effective Date** means the date that is thirty (30) days after entry of a Confirmation Order.

**Estate** means, with regard to Debtor, the estate that was created by the commencement by Debtor of the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550

of the Bankruptcy Code, or otherwise. In the event that this Plan is confirmed by the Bankruptcy Court under section 1191(b) of the Bankruptcy Code, such definition shall also include (1) all of the property defined by section 541 of the Bankruptcy Code and (2) any earning from services performed by the Debtor, both that Debtor acquires after the commencement of the Bankruptcy Case but before the Bankruptcy Case is closed, dismissed, or converted to a case under Chapter 7, 12, or 13, whichever occurs first.

**Executory Contract or Unexpired Lease** means all executory contracts and unexpired leases to which Debtor is a party.

**Filing Date** means MARCH 11, 2021.

**Final Distribution** means the Distribution by Debtor or reorganized Debtor that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

**Final Distribution Date** means the Distribution Date on which the Final Distribution is made.

**Final Order** means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely. In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

**Holder** means a holder of a Claim or Interest, as applicable.

**Impaired** shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

**Initial Distribution Date** means the date of the first payment under the Plan

**Lien** as the meaning set forth in section101(37) of the Bankruptcy Code.

**Person** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

**Plan** means this plan of reorganization as same may hereafter be corrected, amended, supplemented, restated, or modified.

**Priority Claim** means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

**Priority Tax Claim** means a Claim against Debtor that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

**Professional Compensation** means (1) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by Debtor **and the Chapter 11 Sub V Trustee,** if any, and (ii) any amounts the Bankruptcy Court allows pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

**Record Date** means any date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of holders of Allowed Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court prior to the Confirmation Date, then the Record Date shall be the Confirmation Date.

**Record Holder** means the Holder of a Claim as of the Record Date.

**Released Parties** means Debtor.

**Retained Action** means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor' Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by Debtor, (iii) claims and Causes of Action relating to strict enforcement of Debtor's intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of Debtor' business, including without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

**Schedules** means the Schedules of Assets and Liabilities Debtor filed in the Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

**Secured Claim** means a Claim against Debtor to the extent secured by a Lien on any property of Debtor on the Petition Date to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

**Subchapter V Trustee** means LEON S. JONES, or any successor to Leon S. Jones, appointed by the United States Trustee under section 1183(a) of the Bankruptcy Code to serve as the Subchapter V trustee in this Bankruptcy Case.

**Subordinated Claim** means any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code or other applicable law.

**Unimpaired** means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

**Unsecured Claim** means any Claim against Debtor that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.


### 8.02  Binding effect

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 8.03  Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 8.04  Controlling effect

Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

### 8.05  Corporate governance

Intentionally Deleted

### 8.06  Events of Default

Unless otherwise specifically provided in a class under the Plan, in the event of a default by Debtor in payments under the Plan or otherwise, the Holder must send written notice ("Default Notice") to Debtor at the addresses of record for Debtor as reflected on the docket for this Bankruptcy Case, unless Debtor has provided the Holder with a written notice of a change of address. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtor has fifteen (15) days (in the case of a monetary default) and thirty (30) days (in the case of a non-monetary default) from receipt by Debtor and Debtor's counsel of the Default. Notice (or the following business day if the 15th or 30th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default). The Holder must send such Default Notice to Debtor via certified mail or recognized overnight carrier with a copy via email or fax and certified mail to Ian M. Falcone (The Falcone Law Firm, PC) at the address reflected in the then current directory of the State of Bar of Georgia. Debtor shall have fifteen (15) days or thirty (30) days (as applicable) from Debtor's and Debtor's counsel's receipt of the Default Notice to cure such default. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. (For example, a default under Class 1 shall not constitute a default under Class 2).

8.07    **Notices**

All notices under the Plan shall be in writing. Unless otherwise specifically provided here in, all notices shall be sent to Debtor via U.S. Certified Mail Return Receipt or by recognized overnight carrier to the address of record for Debtor in this Case, unless Debtor has provided such Holder with written notice of change of address for Debtor, with a copy via email or fax and certified mail to Ian M. Falcone at the address reflected in the then current directory of the State Bar of Georgia. Receipt of notice by Ian M. Falcone (The Falcone Law Firm PC) shall not be deemed receipt by Debtor of the required notice. Notice to creditors may be provided (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records. Notices shall be deemed received: (i) on the day transmitted if sent via fax or email and (ii) on the day delivered if sent via nationally recognized overnight delivery service or Certified Mail Return Receipt.

8.08    **Retention of Jurisdiction**

8.20.1  Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

a.      Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

b.      The classification of the claim of any creditor and the re-examination of claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to claims. The failure by the Debtor to object to any claim for the purposes of voting shall not be deemed to be a waiver of the Debtor's right to object to, or re-examine, the claim in whole or in part.

c.      To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

d.      To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of Debtor;

e.      To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtor;

f.      To hear and rule upon all applications for Professional Compensation, including the Subchapter V Trustee;

g.      To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

h.     To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

i.     To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

j.     To make such determinations of all questions and disputes regarding title to, security interests in, and liens against, the assets of the debtor, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to an action pending as of confirmation between the Debtor or Debtor-in-Possession and any other party including, but not limited to, any right of the Debtor and/or Debtor-in-Possession to recover assets and money pursuant to the provisions of Title 11 of the United States Code.

k.     To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

l.     To determine any suit or proceeding brought by Debtor to recover property under any provisions of the Bankruptcy Code;

m.    To hear and determine any tax disputes concerning Debtor and to determine and declare any tax effects under this Plan;

n.     To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

o.     To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

p.     To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which Debtor sold any of its assets during the Bankruptcy Case;

q.     To enter a final decree.

r.     To enter an order of discharge.

s.     To enforce and interpret any order or injunctions entered in this Bankruptcy Case.

t.     The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

u.     Entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as this Court may deem necessary.

8.08.2  **Alternative Jurisdiction**

In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction

with regard thereto. Notwithstanding anything to the contrary herein, Debtor shall be authorized to bring any action related to a lease, contract or account (including any account receivable due to Debtor) to which Debtor is a party in any state or local court having jurisdiction over such action.

## 8.09  Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

## 8.10  Time.

Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

## 8.11  Vesting of Debtor's Assets

Except as otherwise explicitly provided in the Plan, upon the Court's entry of the Confirmation Order, all property comprising the Estate (excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtor free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan. As of the earlier of the Effective Date and the entry of a Final Decree, Debtor may operate and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order and, in the case of a Plan confirmed under § 1191(b), the supervision of the Subchapter V Trustee.

**ARTICLE IX**
**DISCHARGE**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt: (i) imposed by this Plan; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from

discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE X
## SUBCHAPTER V TRUSTEE

**10.1    Subchapter V Trustee**

The Subchapter V Trustee was appointed by the US Trustee in this case to perform the duties described in section 1183(b) of the Bankruptcy Code, one of which is to facilitate the development of a consensual Plan of Reorganization.

**10.2    Confirmation under Section 1191(a)**

If this Plan is confirmed under section 1191(a) of the Bankruptcy Code, the services of the Subchapter V Trustee shall terminate upon "substantial consummation" of the Plan, as defined in section 1101(2). Debtor shall directly make all payments required under this Plan, including the first payments required for substantial consummation of the Plan.

The Subchapter V Trustee shall be entitled to apply for reasonable compensation for the Subchapter V Trustee's fees and expenses under 11 USC §§ 330 and 503(b)(3). At Debtor's election, Debtor shall pay any unpaid allowed compensation owed to the Subchapter V Trustee as follows:  (1) on the later of the Effective Date or the day after the order on the Subchapter V Trustee's application for compensation becomes a Final Order or **(2) in equal monthly payments over a nine month period starting on the first day of the month immediately following the month in which the order on the Subchapter V Trustee's application for compensation became a Final Order.**

**10.3    Confirmation under Section 1191(b)**

If this Plan is confirmed under section 1191(b) of the Bankruptcy Code, the services of the Subchapter V Trustee shall terminate upon "substantial consummation" of the Plan, as defined in section 1101(2).  Debtor shall directly make all payments required under this Plan, including the first payments required for substantial consummation of the Plan.

The Subchapter V Trustee shall be entitled to apply for reasonable compensation for the Subchapter V Trustee's fees and expenses under 11 USC §§ 330 and 503(b)(3) periodically following the confirmation of the Plan. Pursuant to section 1191(e) of the Bankruptcy Code, **Debtor shall pay all compensation awarded the Subchapter V Trustee in equal monthly payments over a nine month period starting on the first day of the month immediately following the month in which the order on the Subchapter V Trustee's application for compensation became a Final Order.**

# ARTICLE XI
## DISTRIBUTIONS

**11.1    Delivery of Distributions**

The distribution to a holder of an Allowed Claim shall be made by the Debtor or the Subchapter V Trustee (as applicable) (a) at the address set forth on the proof of claim filed by such holder, (b) at the address set for in any written notice of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of a change of address, or (d) if the holder is not listed in the Schedules, at the last known address of such holder according to the Debtor's books and records. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until Debtor or Subchapter V Trustee (as applicable) is notified by such hold in writing of such holder's then current address, at which time Debtor of Subchapter V Trustee (as applicable) shall recommence distributions to such holder without interest but further provided that (i) any distributions not claimed within six (6) months of return shall irrevocably be retained by Debtor and (ii) such holder shall waive its right to such distributions. All distributions returned to debtor or Subchapter V Trustee (as applicable) and not claimed within six (6) months of return shall be irrevocably retained by Debtor notwithstanding any federal or state escheat laws to the contrary.

**11.2    Withholding Taxes**

Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

# ARTICLE XII
## TAX CONSEQUENCES

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only. No specific tax consequences to any Creditor or Holders of an Interest are represented, implied, or warranted. Each Holder of a Claim or Interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation. The Debtor assumes no responsibility for the tax effect that consummation of the Plan will have on any given Holder of a Claim or Interest. Holders of Claims or Interest are strongly urged to

consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

The Debtor may propose amendments to or modifications of this Plan at any time prior to confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

Respectfully submitted,

Presented by:

/s/ Ian M. Falcone
Ian M. Falcone
Attorney for Debtors
Georgia Bar No. 254470

THE FALCONE LAW FIRM, P.C.
363 Lawrence Street
Marietta GA 30060
770-426-9359
imf@falconefirm.com